UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUSTAVO PURECO CALDERON,<br><br>Petitioner,<br><br>v.<br><br>WILLIAM BARR,<br><br>Respondent. | No.  2:20-cv-00891 KJM GGH<br><br><u>ORDER AND FINDINGS AND</u><br><u>RECOMMENDATIONS</u> |

*Introduction*

Petitioner, an alien detainee in the custody of the United States Immigration and Customs Enforcement ("ICE"), is proceeding through counsel on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The matter was referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 626(b)(1) and Local Rule 302(c).

Pending before the court is petitioner's motion seeking release on bail, or other conditions, from ICE custody based on the potential spread of COVID-19 at Yuba County Jail in Marysville, CA. ECF No. 6. Pursuant to the court's expedited briefing schedule, respondent has filed a response, ECF No. 7, and petitioner a reply, ECF No. 8.  After carefully reviewing the filings, and application of the applicable law, the court now issues the following Findings and Recommendations recommending a stay of this action.

1

*Factual Background*

Petitioner is a citizen of Mexico who became a lawful permanent resident of the United States in December 1, 1989. ECF Nos. 6 at 1; 7 at 3. On May 17, 1991, petitioner was convicted of second-degree murder and assault with a firearm in the Sonoma County Superior Court. ECF Nos. 6 at 2; 7 at 3. He was sentenced to a term of fifteen years to life in prison, with an additional three years. Id.  On January 30, 2019, the Department of Homeland Security ("DHS") issued petitioner a Notice to Appear before an immigration judge for removal proceedings pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), for having been convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(A).  ECF No. 7 at 3.

On April 12, 2019, petitioner, through counsel, appeared before an immigration judge and admitted the factual allegations against him in the Notice to Appear and conceded the charge of removability. ECF No. 7 at 3. Subsequently thereafter, petitioner filed before the immigration judge a deferral of removal under the Convention Against Torture ("CAT"). ECF Nos. 6 at 2; 7 at 3. On May 23, 2019, after holding an individual merits hearing on petitioner's CAT application, the immigration judge denied petitioner's request for relief. Id. Petitioner appealed to the decision to the Board of Immigration Appeals ("BIA") and on October 4, 2019, the BIA denied petitioner's appeal. Id.

On October 9, 2019, petitioner filed a petition for review before the Ninth Circuit Court of Appeals for review of the BIA's decision as well as a stay of his removal. ECF Nos. 6 at 1-2; 7 at 3. The petition for review and motion for stay has been fully briefed and is currently pending before the Court of Appeals. ECF Nos. 6 at 2; 7 at 3.

*Habeas Corpus Procedural Background*

On March 30, 2020, petitioner filed before the Ninth Circuit Court of Appeals ("Court of Appeals") a "Motion for Immediate Release on Account of Risks to Personal and Community Health Due to COVID-19 Pandemic[.]" ECF No. 2. On April 30, 2020, after receiving briefing from parties, (Opposition, ECF No. 3; Reply, ECF No. 4) the Court of Appeals construed petitioner's motion for immediate release as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and transferred the matter to this court. ECF No. 1. In its reasoning for transferring

1    the case to the district court, the Court of Appeals found while the Immigration and Nationality

2    Act provided the Court of Appeals jurisdiction over petitions for review of final orders of removal

3    (citing 8 U.S.C. § 1251(a)(1)), "district courts retain jurisdiction under 28 U.S.C. § 2241 to

4    consider habeas challenges to immigration detention if they are sufficiently independent of the

5    merits of the removal order. See Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)

6    (holding that district courts have jurisdiction over 28 U.S.C. § 2241 "habeas challenge[s] to

7    detention [that] ha[ve] a basis independent of the merits of the petition for review")." ECF No. 1

8    at 2. In light of the immediacy of the issues presented, the Court of Appeals urged this court to

9    address this matter expeditiously.

10         On April 30, 2020, the Court of Appeals transferred this matter to this court. ECF No. 1.

11    On May 4, 2020, the undersigned issued an order requesting petitioner to file a motion for release

12    on bail/conditions pending final adjudication of this petition and setting the matter on an

13    expedited briefing schedule. On May 6, 2020, petitioner filed a "Motion for Release on Bail or

14    Conditions Deemed Appropriate by the Court." ECF No. 6. On May 8, 2020, respondent filed a

15    response, ECF No. 7, and on May 11, 2020, petitioner filed a reply, ECF No. 8.

16    *Issues*

17         Neither in his motion before the Ninth Circuit nor in his motion before this court, does

18    petitioner set forth the basis for the request for release pending Ninth Circuit review.

19         It is undisputed that a person in petitioner's situation is mandatorily detained under the

20    immigration laws of the United States.  See Demore v. Kim, 538 U.S. 510 (2003). As a detainee

21    under the immigration laws, petitioner is considered to be a civil detainee.  Zadvydas v. Davis,

22    533 U.S. 678, 690 (2001).  As such the propriety of detention on a constitutional basis is judged

23    upon whether such detention amounts to punishment in violation of the Fifth Amendment.

24    Youngberg v. Romeo, 457 U.S. 307, 321–22 (1982); Bell v. Wolfish, 441 U.S. 520 (1979)

25    (pretrial detainees).  Moreover, under the Fifth Amendment's Due Process Clause, a civil detainee

26    cannot be subjected to conditions that amount to punishment. The Fifth Amendment's Due

27    ////

28    ////

Process Clause protects a civil detainee from conditions that amount to punishment. <u>King v. Cty. of Los Angeles</u>, 885 F.3d 548, 556–557 (9th Cir. 2018); <u>Jones v. Blanas</u>, 393 F.3d 918, 931 (9th Cir. 2004).

It is important to note here, that unlike the situation in <u>Singh</u>, 638 F.3d 1196, petitioner does not challenge his mandatory detention under the immigration laws on the basis that his detention pursuant to the immigration statutes has been unduly prolonged (approximately one year and a half). Rather he challenges, his detention solely on conditions of confinement, i.e., that the potential for spread of COVID-19 within the close confines of the Yuba County Jail, and the potential for deleterious effects on his health, or even life, amount to punishment in violation of the Fifth Amendment to the Constitution.

Thus, no further mention will be made here concerning release based on prolonged detention. As the Supreme Court has recently announced, the raising of such issues *sua sponte* is an abuse of discretion. <u>United States v. Sineneng-Smith</u>, No. 19-67, 2020 WL 2200834 (U.S. May 7, 2020).

Respondent has cross-moved for a stay of this case so that petitioner's claim may be litigated in a provisionally certified class action, <u>Zepeda Rivas v. Jennings</u>, No. 20-CV-02731-VC, 2020 WL 2059848 (N.D. Cal. Apr. 29, 2020).

*Jurisdiction*

The vast majority of cases in the lower courts dealing with the COVID-19 pandemic as it affects detention facilities more or less assume jurisdiction is appropriate under 28 U.S.C. § 2241 because the ultimate relief sought is release from custody. See e.g., <u>Pimentel-Estrada v. Barr</u>, No. C20-495 RSM-BAT, 2020 WL 2092430, at *11 (W.D. Wash. Apr. 28, 2020). Of the cases that have written about the jurisdictional issue, one of the more succinct analyses appears in <u>Habibi v. Barr</u>, No. 20-CV-00618-BAS-RBB, 2020 WL 1864642, at *2 n.2 (S.D. Cal. Apr. 14, 2020):

> The Government also argues that "seeking release under a writ of habeas corpus is not an appropriate method for remedying confinement conditions[.]" (Resp. at 11–12.) The Court disagrees with the Government's characterization of Petitioner's claim. Petitioner is not challenging a specific condition of his confinement but instead claims that his confinement itself violates his due process rights—a direct challenge to the validity of his detention. *See*

4

1

*Muhammad v. Close*, 540 U.S. 749, 750 (2004). Other courts in this Circuit have considered similar claims brought under § 2241. *See Bent v. Barr*, Case No. 19-CV-06123-DMR, 2020 WL 1812850 (N.D. Cal. April 9, 2020); *Castillo v. Barr*, Case No. CV 20-00605-TJJH (AFMx), 2020 WL 1502864 (C.D. Cal. Mar. 27, 2020). Moreover, the Ninth Circuit itself has *sua sponte* ordered the release of an immigrant detainee "in light of the rapidly escalating public health crisis[.]" *Xochihua-Jaimes v. Barr,* Case No. 18-cv-71460, 2020 WL 1429877, at *1 (9th Cir. Mar. 24, 2020). Thus, the Court does not find persuasive the Government's position that the Petition is an improper vehicle for Petitioner's claims.

2

3

4

5

6

7
However, the undersigned is not so sanguine as the above courts that jurisdiction in

8
habeas corpus exists.[1]  While the words of 28 U.S.C. § 2241 could encompass any violation of

9
the Constitution, i.e., "[h]e is in custody in violation of the Constitution," the Supreme Court has

10
made clear that conditions of confinement cases should proceed in civil rights cases, where the

11
remedy is to correct the Constitutional deficiency, see Preiser v. Rodriguez, 411 U.S. 475, 484–

12
486 (1973); Crawford v. Bell, 599 F.2d 890, 891–892 (9th Cir. 1979); Badea v. Cox, 931 F.2d

13
573, 574 (9th Cir. 1991). Attacks on the legality of confinement *per se* should proceed in habeas

14
corpus actions where the remedy is release from custody.  See also Nettles v. Grounds, 830 F.3d

15
922, 930–34 (9th Cir. 2016) (a civil rights action is the *exclusive* vehicle for an inmate's claim

16
that is not encompassed within the core of habeas corpus such as a challenge to conditions of

17
confinement).

18
It is certainly true that petitioner seeks the remedy of release here.  However, there is a

19
risk of turning 28 U.S.C. § 2241 into a general civil rights statute by the mere expedient of a

20
petitioner seeking that release remedy, perhaps among other remedies, in every habeas action in

21
which conditions of confinement are at issue, e.g., poor medical treatment, unsanitary conditions,

22
overcrowding, assaultive environment, and so forth.  Even in the COVID-19 situation, release is

23
not the only method by which this contagious disease may be remedied. What then differentiates

24
this action in habeas corpus from a garden variety civil rights action? The undersigned is in

25
////

26

27
[1] The undersigned has no doubt that habeas corpus jurisdiction would exist for issues involving either the statutory basis for detention per se, prolonged detention, or the procedures involved in the underlying immigration administrative decisions.  See Demore, 538 U.S. at 516–17; I.N.S. v. St. Cyr, 533 U.S. 289 (2001).

28

agreement with the statement in <u>Martinez Franco v. Jennings</u>, No. 20-CV-02474-CRB, 2020 WL 1976423, at *4 (N.D. Cal. Apr. 24, 2020):

> Even if the Court agreed that civil detention is unconstitutional whenever it impairs proper social distancing, Martinez Franco's requested relief is not an appropriate means to implement that rule. Martinez Franco is not seeking an injunction requiring the government to implement appropriate social distancing at Mesa Verde. He seeks only release from detention, and only for himself. If the Constitution requires appropriate social distancing for civil detainees, that result should be achieved with an injunction ordering social distancing in detention facilities, not releasing detainees who request a TRO on a first-come, first-serve basis. *See Dawson,* 2020 WL 1304557, at *2 ("[E]ven if Plaintiffs could show a Fifth Amendment violation, Plaintiffs provide no authority under which such a violation would justify immediate release, as opposed to injunctive relief that would leave Plaintiffs detained while ameliorating any alleged violative conditions within the facility.").

The parties do not cite to pre-COVID-19 authoritative decisions which hold that conditions of confinement may be adjudicated in habeas, and in the short time that this Findings and Recommendations must be issued, neither has the undersigned.[2] All of the pre-COVID-19 authoritative decisions applying habeas corpus jurisdiction to release requests in immigration cases reviewed by the undersigned involve either the statutory basis for detention per se, prolonged detention, or the procedures involved in the underlying immigration administrative decisions.

Nevertheless, because petitioner does seek release from custody, perhaps the analysis of the propriety of a 28 U.S.C. § 2241 action to remedy the COVID-19 potential in detention lies

---

[2] With the exception of <u>Bell</u>, 441 U.S. 520, the cases cited within the *Issues* section explaining the prohibition of punishment for civil detainees are all civil rights cases. In <u>Bell</u>, 441 U.S. at 527 n.6, (emphasis added) the Supreme Court explained: "Petitioners apparently never contested the propriety of respondents' use of a writ of habeas corpus to challenge the conditions of their confinement, and petitioners do not raise that question in this Court. However, respondents did plead an alternative basis for jurisdiction in their "Amended Petition" in the District Court-namely, 28 U.S.C. § 1361-that arguably provides jurisdiction. And, at the time of the relevant orders of the District Court in this case, jurisdiction would have been provided by 28 U.S.C. § 1331(a). *Thus, we leave to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of the confinement itself.*"

See also <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1862–63 (2017) (immigration alien detainee context—stating that the civil rights-habeas corpus issue remains open to this day.) The undersigned has not determined that that the "another day" issue has ever been decided.  It just seems too much of an expedient to slap a "release" request on a civil rights conditions of confinement issue, and *mirable dictu*, habeas jurisdiction is proper.

1    more in the cognizability of the claim as opposed to subject matter jurisdiction.  For example, a

2    prisoner seeking parole eligibility in California may initially file a habeas corpus action in federal

3    court based on a lack of "some evidence" in the administrative proceedings. The claim will

4    ultimately be dismissed, not because of a lack of subject matter jurisdiction, but because such a

5    claim is not ultimately cognizable.  See Swarthout v. Cooke, 562 U.S. 216 (2011).

6          In this case, petitioner's claim might be defeated because of a lack of specific evidence

7    that his institution has been indifferent to the COVID-19 situation, or that petitioner is not

8    sufficiently at risk, but that would go to the merits of the claim as opposed to the power of the

9    court to decide such a claim. Although uneasy with the habeas corpus vehicle to decide

10   conditions of confinement issues, the undersigned will ultimately find habeas corpus subject

11   matter jurisdiction to be proper. And because the undersigned is recommending a stay of this

12   action in the following section, there will be no need to make a final jurisdiction determination or

13   assess the ultimate propriety of petitioner's COVID-19 claim.

14   *Request for Stay*

15         Having determined that petitioner's present COVID-19 action is essentially a conditions

16   of confinement civil rights action contained within a 28 U.S.C. § 2241 habeas wrapper, the

17   undersigned turns to respondent's request to stay this action in light of the class action, Zepeda-

18   Rivas, 2020 WL 2059848.  Exhibit A to respondent's response contains the TRO issued out of the

19   Northern District of California in Zepeda-Rivas—an ICE COVID-19 class action. ECF No. 7 at

20   16-23. Petitioner is a member of that provisionally certified class action.  ECF No. 7 at 18 (ICE

21   Detainee at the Yuba County Jail). Importantly, the class issues encompass an individual

22   determination of the propriety of release for each and every member of the class.

23                 ICE is thus hereby ordered to provide the Court and class counsel
                   with information and records regarding each detainee at the facilities.
24                 This includes names, ages, any health vulnerabilities, and any
                   criminal information (including rap sheets and I-213 forms). ICE is
25                 also ordered to ensure that class counsel has the ability to promptly
                   communicate with detainees. The purpose of this order is to enable
26                 the Court to implement a system for considering individual bail

27   ////

28   ////

7

1
2
>applications, modeled after a system created and successfully implemented by Judge Young in the District of Massachusetts to release detainees on bail while their habeas cases are pending.

3    Id. at 21.

4         In his reply (as opposed to the initial motion for release), petitioner loads up the docket

5    with declarations from persons in previous cases (some older than a month) to prove that the

6    potential COVID-19 detriment to detainees, and hence to petitioner, is so severe that release must

7    be authorized.[3] ECF No. 8. Petitioner contends that the focus of the Zepeda-Rivas case is to find a

8    solution within the confines of the Yuba County Jail for social distancing as opposed to adjudging

9    whether release of detainees shall take place. While the inability to social distance may be at the

10   core of the detainees' complaints in the Northern District case, the undersigned again points to the

11   express wording of the TRO decision: "[t]he purpose of this order is to enable the Court to

12   implement a system for considering individual bail applications[.]" Zepeda Rivas, 2020 WL

13   2059848, at *3.

14        Respondent further cites to the potential for conflicting and several bail determinations if

15   such are performed by the court in the Northern District, and district courts, like this court, which

16   are located in the district of confinement. The undersigned agrees; there is no need for dueling

17   release determinations, nor "two bites" at the release apple.

18        Respondent's citation to Crawford, 599 F.2d 890, is on point.  Although Crawford is a

19   civil rights action, so, in essence, is this one.

20
21
22
23
24
>There is no reason to believe the issue of overcrowding at McNeil Island will not be fully and vigorously litigated by the Evans class representatives. Moreover, increasing calendar congestion in the federal courts makes it imperative to avoid concurrent litigation in more than one forum whenever consistent with the rights of the parties. A court may choose not to exercise its jurisdiction when another court having jurisdiction over the same matter has entertained it and can achieve the same result. *Skelly v. Dockweiler*, 75 F.Supp. 11, 17 (S.D. Cal. 1947). For these reasons the district

25
>////

26
27
28

---

[3] It is sharp practice to backload one's major points and evidence into a reply which cannot then be contested by one's opponent.  It is apparent that these declarations were, or should have been, available to petitioner's counsel, at least for the most part, at the time he made his perfunctory motion in the Ninth Circuit and again in this court.

court was correct in dismissing those portions of Crawford's complaint which duplicate the Evans allegations and prayer for relief.

Crawford, 599 F.2d at 893.

Here, petitioner is seeking release pending his Ninth Circuit CAT review. The same relief can be afforded in the Northern District class action. Petitioner does not relate what extra relief he might obtain in this action, and indeed, since the present action lies in habeas, there is no other relief obtainable.[4]

Accordingly, this action need not be fully dismissed at this point, but it should be stayed. Depending on the ultimate outcome of the class action in Zepeda-Rivas, most probably a determination of some sort on release pending review, this case can be finally dismissed, or resurrected if need be on some remote possibility of a non-adjudicated release request in the Northern District action not apparent at this time. Moreover, there is nothing in the Ninth Circuit's general remand of this 28 U.S.C. § 2241 action to this court which prohibits this recommendation. ECF No. 1 at 2 ("We urge the district court to address this matter [the 28 U.S.C. § 2241 action] expeditiously.") There are no instructions to this court on how to adjudicate the 28 U.S.C. § 2241 action, nor is there discussion of a complementary class action and its effect on the remand.

*Unsealing of Documents*

The parties do not oppose the unsealing of documents which the Ninth Circuit initially ordered sealed. ECF Nos, 2, 3, 4 shall be unsealed.

*Conclusion*

Accordingly, IT IS HEREBY ORDERED that ECF Nos. 2, 3, 4 be unsealed by the Clerk of the Court.

Further, IT IS HEREBY RECOMMENDED that this action be stayed pending adjudication of the Northern District class action in Zepeda Rivas v. Jennings, No. 20-CV-02731-VC, 2020 WL 2059848 (N.D. Cal. Apr. 29, 2020).

---

[4] As discussed earlier, petitioner's motion for release does not address at all a basis for release on account of the duration of pre-review detention—a matter entirely distinct from the COVID-19 issue. It should not be addressed by this court.

9

1    These findings and recommendations are submitted to the United States District Judge

2    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Any objections to this

3    Findings and Recommendations shall be filed and served no later than 4:00 p.m. on Thursday,

4    May 14; any reply to objections shall be filed no later than Friday, May 15, 2020.  Such a

5    document should be captioned "Objections to Magistrate Judge's Findings and

6    Recommendations."  The parties are advised that failure to file objections within the specified

7    time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153

8    (9th Cir. 1991).

9    DATED: May 12, 2020

                                <u>/s/ Gregory G. Hollows</u>
10                          UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28